IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TERESA M. MITCHELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:14-CV-41 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Teresa M. Mitchell ("Mitchell") challenges the decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1383f. Mitchell alleges multiple errors by the ALJ in the determination of whether her impairments meet a listing, her residual functional capacity and her disability onset date. Having reviewed the record, I **RECOMMEND DENYING** Mitchell's Motion for Summary Judgment (Dkt. No. 13), and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 21.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Mitchell failed to demonstrate that she was disabled under the Act.[1] "Substantial evidence is such relevant evidence as a reasonable mind might accept as

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which

1

adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## **CLAIM HISTORY**

Mitchell filed for SSI on July 29, 2009, claiming that her disability began on September 15, 2004. R. 16. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 91–95, 99–105. On September 18, 2012, ALJ Geraldine Page held a hearing to consider Mitchell's disability claim. R. 31–67. Mitchell was represented by an attorney at the hearing, which included testimony from Mitchell and vocational expert Leah Salyers. Id.

On November 1, 2012, the ALJ entered her decision analyzing Mitchell's claim under the familiar five-step process, and denying Mitchell's claim for the period on or before May 30, 2012, but finding Mitchell disabled as of May 31, 2012.[2] R. 12–30. The ALJ found that, prior to May 31, 2012, Mitchell suffered from the severe impairments of obesity, depression, anxiety, insulin resistance syndrome with acanthosis, thoracic-lumbar strain, history of migraine

---

affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent engaging in any and all forms of substantial gainful employment given the claimant's age, education, and work experience. See 42 U.S.C. §1382c(a)(3)(B).

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

2

headaches, degenerative disc disease of the lumbar spine, and degenerative joint disease of the knees. The ALJ further found that beginning on May 31, 2012, Mitchell had the additional severe impairments of bilateral carpal tunnel syndrome and mild degenerative joint disease of the hands. R. 18.

The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 18. The ALJ determined that prior to May 31, 2012, Mitchell retained the residual functional capacity ("RFC") to perform sedentary work, with the following limitations: lift and carry 20 pounds occasionally and 10 pounds frequently; sit for 6 hours in an 8 hour workday for 1 hour at a time; stand and/or walk for 2 hours in an 8 hour workday for 30 minutes at a time; needs the opportunity for brief positional changes from sitting to standing at a work station; occasional pushing and pulling with the upper extremities; frequent handling and fingering; occasional operation of foot controls; occasional stooping, crouching, balancing, kneeling and climbing of ramps and stairs; no crawling; work that does not require exposure to hazardous machinery, unprotected heights, vibrating surfaces, or excessive background noise; and no climbing ladders, ropes or scaffolds. The ALJ also restricted Mitchell to simple, repetitive, unskilled tasks in a non-crowded work environment with only occasional interaction with the public. R. 25. The ALJ determined that beginning May 31, 2012, Mitchell had the additional limitation of occasional handling with both hands. R. 27.

Given the above RFC, the ALJ determined that since September 15, 2004, Mitchell has been unable to perform any past relevant work, but that prior May 31, 2012, Mitchell could work at other jobs that existed in significant numbers in the national economy, such as clerk/addresser, machine operator, and inspector. R. 28. Thus, the ALJ concluded that Mitchell was not disabled prior to May 31, 2012. R. 29.

Mitchell appealed the ALJ's decision, and on December 6, 2013, the Appeals Council denied Mitchell's request for review (R. 1–7), and this appeal followed.

## ANALYSIS

Mitchell raises multiple issues in her appeal before the court; however, her arguments can be condensed into two general assertions of error: 1) the ALJ erred by finding that Mitchell did not have a severe impairment with handling bilaterally until May 31, 2012; and 2) the ALJ erred by finding that Mitchell's mental impairments did not equal a listed impairment under listings §§ 12.04 and 12.06.

**Disability Onset Date**

The ALJ relied upon the consultative report of William Humphries, M.D. to conclude that Mitchell was limited to occasional handling with both hands after May 31, 2012. . R. 458–71. Dr. Humphries examined Mitchell on May 31, 2012, and Mitchell told Dr. Humphries that she had carpal tunnel syndrome diagnosed 10 years earlier with pain and an electric shock feeling in both wrists and hands with decreasing grip bilaterally. R. 458. On physical exam, Dr. Humphries noted that Mitchell's hands revealed some beginning of mild Heberden node formation[3] at the distal interphalangeal ("DIP") joints and some mild enlargement of other joints in her arms. Mitchell had diffuse tenderness to palpation of the soft tissues and joints of both upper extremities. R. 459. Mitchell also had a mild sensory loss in both palms, but her fine manipulation was performed adequately. Id. Dr. Humphries diagnosed Mitchell with moderate bilateral carpal tunnel syndrome and mild degenerative joint disease in both hands and knees. R. 460. Dr. Humphries determined that Mitchell was limited to occasional handling, fingering, feeling and pushing/pulling with both hands. R. 464.

---

[3] Heberden's nodes are bony enlargements of the DIP joints and are a classic sign of hand osteoarthritis. See http://osteoarthritis.about.com/od/handosteoarthritis/a/Heberdens_nodes htm.

4

The ALJ concluded, based upon the objective findings by Dr. Humphries, that Mitchell's allegations regarding her difficulty fingering and gripping with her hands were generally credible as of May 31, 2012. The ALJ noted that there was no medical evidence of carpal tunnel syndrome prior to May 31, 2012; thus, he limited Mitchell to occasional handling with bilateral hands as of that date. R. 26.

Mitchell asserts that she suffered from limitations in her hands for several years prior to May 31, 2012, and that the ALJ erred by concluding that her complaints of limitations were not credible prior to that date. Pl's Br. Summ. J. p. 23. In support of this assertion, Mitchell cites her statement to Dr. Humphries that she had been diagnosed with carpal tunnel syndrome "about 10 years ago" with pain and electric shock feeling in both wrists and hands with decreasing grip bilaterally. R. 458. Mitchell also relies upon her testimony to the ALJ during the administrative hearing of pain in her wrists since 2005, which causes her fingers to lose feeling and go numb. Pl's Br. Summ. J. p. 23.

Aside from these subjective statements by Mitchell, there is little evidence in the record to support her claim that she suffered from a severe impairment with handling and fingering in both hands prior to May 31, 2012. Although Mitchell regularly sought treatment for multiple physical conditions, her treatment records contain only two notations of complaints relating to her wrists and hands. Specifically, during a psychiatric evaluation on April 15, 2010, Mitchell reported her physical complaints as "stomach, wrists, knee." R. 383. On October 21, 2010, Mitchell complained to a nurse practitioner with her treating physician, Steven J. Collins, M.D., of worsening bilateral wrist pain, and reported that she had been working a lot on her computer. R. 428. The examination from that date does not reflect that Mitchell had any difficulty with handling, gripping and fingering with her hands. R. 418. There are no treatment notes from any

5

doctor which reflect that Mitchell had been diagnosed with carpal tunnel syndrome. The record contains no indication of any mention that Mitchell had carpal tunnel syndrome prior to May 31, 2012. There are likewise no treatment notes reflecting that Mitchell suffered from limitations in her ability to grip and handle prior to May 31, 2012. Indeed, on November 21, 2011, Mitchell's treating physician Dr. Collins, completed a medical source statement and noted that Mitchell had unlimited manipulative limitations. R. 452. Thus, substantial evidence supports the ALJ's conclusion that Mitchell was not limited to occasional handling with bilateral hands until May 31, 2012.

Mitchell also asserts that the ALJ erred by failing to consult a medical advisor to determine Mitchell's disability onset date, claiming that the ALJ's determination of her onset date was arbitrary. When an ALJ determines that an individual is disabled, he or she must also establish the onset date of the disability. Social Security Ruling ("SSR") 83–20, 1983 WL 31249, at *1 (SSA 1983). When an ALJ must infer the onset date because of a lack of evidence in the record, the ALJ is required to consult a medical advisor to assist in the determination. SSR 83–20, 1983 WL 31249, at *3. The Fourth Circuit has explained that SSR 83–20 "does not expressly mandate that the ALJ consult a medical advisor in every case where the onset of disability must be inferred." Bailey v. Chater, 68 F.3d 75, 79 (4th Cir. 1995). Instead, the ALJ must obtain the assistance of a medical advisor when the evidence of onset is ambiguous and adequate medical records are not available. Id.

Here the evidence of onset was not ambiguous and there were adequate medical records available. The ALJ had no need to appoint a medical advisor because she was able to consider direct evidence of Mitchell's condition before and after the disability onset date. See Pugh v. Bowen, 870 F.2d 1271, 1278 n.9 (7th Cir. 1989) (medical advisor was unnecessary where the

6

ALJ had a complete medical chronology of the claimant's condition throughout the relevant time period); Emrich v. Colvin, No. 1:13cv1012, 2015 WL 867287, at *5–6 (M.D.N.C. March 2, 2015) (medical advisor not necessary where the ALJ had direct evidence concerning claimant's condition prior to the onset date) (collecting cases); Orr v. Comm'r of Soc. Sec. Admin., No. 2:12-CV-00023-MOC, 2014 WL 806427, at *6 (W.D.N.C. Feb. 28, 2014).

The ALJ considered a large amount of evidence in determining the disability onset date, including Mitchell's testimony, the opinions of treating and consultative physicians, and extensive medical documentation. The treating and consultative physician reports and medical documentation are not in conflict, and reflect that Mitchell did not suffer from a disabling condition in her bilateral hands prior to May 31, 2012. While Mitchell may have experienced some pain and discomfort in her wrists prior to that date, the medical evidence does not suggest that her symptoms were so severe as to limit her ability to frequently handle prior to May 31, 2012. Thus, the ALJ's disability onset date is supported by substantial evidence.

### Mental Impairments

Mitchell also asserts that the ALJ erred by concluding that her mental impairments did not meet or equal a listing. The listings describe limited circumstances in which a claimant's impairment is so severe that the individual is categorically deemed disabled without further inquiry. Mitchell has the burden of proving that her impairments meet the criteria of the listing. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir.1993).

Mitchell argues that her mental impairments meet the criteria of listings §§ 12.04 (Affective Disorder) and 12.06 (Anxiety-Related Disorder). The qualifying requirements for listing § 12.04 include both medical (paragraph "A") criteria, and functional (paragraphs "B" and "C") criteria. 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.04. To meet a listing under §§ 12.04 and

7

12.06 a claimant must have certain medical findings and satisfy at least two of the following paragraph "B" limitations: 1) marked restriction of activities of daily living; 2) marked difficulties in maintaining social functioning; 3) marked difficulties in maintaining concentration, persistence, or pace; or, 4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App.1. § 12.04(B). "[Marked] means more than moderate but less than extreme." 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.00(C).

In her consideration of the record, the ALJ determined that Mitchell suffered from mild restriction in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration and no episodes of decompensation. R. 25. Thus, the ALJ concluded that Mitchell did not demonstrate the necessary paragraph "B" or "C" functional difficulties to qualify for listings §§ 12.04 or 12.06. Id.  Mitchell asserts that she suffers from marked impairments with activities of daily living, social functioning and concentration, persistence or pace.  However, the record supports the ALJ's conclusion that Mitchell has only mild to moderate limitations in those areas.

Mitchell has a history of anxiety and depression, and has received treatment for both since June 2009. Mitchell sought regular mental health treatment with Sonya Bohon, M.D., Nadia Tucker, M.D., and psychiatrist J. Thomas Noga, M.D. R. 256–267, 273–277, 289–92, 435–48, 470–71, 476–77.  Mitchell also underwent treatment through EHS Support Services and Piedmont Community Services. R. 289–92, 376–414.  Mitchell's treatment consisted of medication and counseling sessions; she has not required inpatient care.

On July 22, 2010, Annemarie Carroll, Ph.D., performed a consultative mental examination of Mitchell. R. 312–15.  Dr. Carroll determined that Mitchell was oriented to all spheres, her intelligence is in the low average range, her fund of knowledge is below average,

8

and she has limited insight and intact judgment. R. 314. Dr. Carroll noted that Mitchell was initially hostile and defensive with the interview process, and demonstrated low effort and frustration tolerance. Id. Dr. Carroll assessed Mitchell's GAF at 60.[4] Dr. Carroll determined that Mitchell can follow simple commands and has the ability to learn more complex tasks, but her low frustration tolerance may result in her refusing to attempt tasks she believes are too difficult. Dr. Carroll recommended an employment setting with limited social interaction, but found that Mitchell can maintain regular attendance on a job. R. 315. Dr. Carroll specifically noted that Mitchell is functioning at a higher level than she believes, is out of the house daily, is the primary caregiver for her children and adequately performs all household chores. Id.

On October 4, 2010, state agency psychologist Maurice Prout, Ph.D., determined that Mitchell was capable of understanding and following simple instructions and adequately interacting with others in a non-crowded environment. R. 337–39.

On May 23, 2011, state agency psychological consultant Louis Perrot, Ph.D., determined that Mitchell had mild restriction of activities of daily living, and moderate difficulties maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. R. 69–86. Dr. Perrot determined that Mitchell retained the residual functional capacity to perform simple, routine, non-stressful work with limited social interaction. Id.

Substantial evidence supports the ALJ's conclusions that Mitchell suffered from mild to moderate impairments with activities of daily living, maintaining social functioning and concentration, persistence, or pace. Indeed, the ALJ's conclusion is consistent with all of the

---

[4] The GAF Scale is used by mental health professionals to rate overall functioning and considers the psychological, social, and occupational functioning of an individual on a hypothetical continuum of 1 to 100. Am. Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. Rev. 2000) (DSM IV), with 100 being the most high-functioning. A score of 51-60 suggests moderate symptoms or difficulty in social or occupational, or school functioning. Id.

9

reviewing and examining opinion evidence. The only marked impairment assessed by any of the reviewing or consulting psychologists was a marked limitation with carrying out detailed instructions. R. 337. Additionally, Mitchell frequently reported daily activities including preparing meals, washing dishes, caring for her children, driving her fiancé, and grocery shopping once and month. R. 24, 312–14. Dr. Carroll specifically noted that Mitchell is functioning at a higher level than she believes. R. 315. Thus, I recommend affirming the ALJ's finding that Mitchell's mental impairments do not meet a listing.

Mitchell also asserts that the ALJ failed to adequately address her mental limitations at Steps 4 and 5 as required by SSR 96-8p. Mitchell correctly states that Social Security Ruling ("SSR") 96-8p requires the ALJ to include a narrative discussion describing how the evidence supports her conclusions when developing the RFC. SSR 96-8p, 1996 WL 374184; Teague v. Astrue, No. CA 1:10-2767-MBS-SVH, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8p at *7; Meadows v. Astrue, No. 5:11CV00063, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. JKS 09-2545, 2010 WL 5237850, at *5 (D. Md. Dec. 16, 2010)).

Here, the ALJ's discussion of Mitchell's mental limitations satisfies the requirements of SSR 96-8p. The ALJ considered both medical and non-medical evidence in assessing Mitchell's RFC and provided the narrative discussion required by the regulations. The ALJ noted the history of Mitchell's mental symptoms, and reviewed her mental health treatment in detail. R. 18–25. The ALJ reviewed and considered each of the physicians' opinions relating to Mitchell's mental impairments, and assigned great weight to the opinions of the state agency

10

psychologists and consultative examiner. R. 18–25. The ALJ also considered Mitchell's testimony as to her daily activities and social interaction and her reports of the same to the consultative physicians. R. 18–25. Given the ALJ's consideration of medical opinions, the claimant's testimony, and evidence of mental impairment, which she documented through a narrative discussion, the court is capable of meaningfully reviewing the RFC; thus, the ALJ met the requirements of SSR 96-8p. See Taylor v. Astrue, No. BPG-11-0032, 2012 WL 294532, at *6 (D. Md. Jan. 31, 2012).

Mitchell also argues that it was error for the ALJ to address her moderate difficulties with concentration, persistence and pace by limiting her to simple, routine, repetitive tasks, relying upon the recent Fourth Circuit case Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015).[5] In Mascio, the Fourth Circuit concluded that a claimant's limitations in concentration, persistence, or pace are not addressed by a hypothetical limitation to simple, routine tasks, or unskilled work. Id. The court was concerned that the ALJ did not explain why Mascio's moderate limitation in concentration, persistence, or pace at step three did not translate into a limitation in Mascio's residual functional capacity. Id. The court noted, however, that the ALJ may find that the concentration, persistence, or pace limitation would not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. Id.

Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision, especially where, as the ALJ held in Mascio, a claimant's concentration, persistence, or pace limitation does not

---

[5] Neither party supplemented the briefing after Mascio was filed, but both addressed the affect of Mascio on this case during oral argument.

affect the ability to perform simple, unskilled work. The ALJ has the responsibility to address the evidence of record that supports that conclusion.

Here, the ALJ did not, as Mitchell asserts, "simply limit [Mitchell] to unskilled work without more." Pls. Br. Summ. J. p. 32. Rather, the ALJ limited Mitchell to simple, repetitive, unskilled tasks in a non-crowded work environment with only occasional interaction with the public. R. 27. In support of this limitation, the ALJ noted that despite Mitchell's moderate impairment with concentration, persistence or pace, the state agency psychological consultants concluded that Mitchell retained the capacity to perform simple, routine, non-stressful work with limited social interaction. R. 27, 83, 339. The ALJ also noted that this conclusion was consistent with Dr. Carroll's finding that Mitchell can follow simple commands, and "has the ability to learn more complex tasks, but has a low frustration tolerance." R. 315. Dr. Carroll concluded that Mitchell would perform best in an employment setting with limited social interaction, but is functioning at a higher level than she believes, and should be able to maintain regular attendance on a job. Id.

Thus, this is not a situation like Mascio, where the ALJ summarily concluded that a limitation of simple, unskilled work accounts for the claimant's moderate impairment in concentration, persistence and pace with no further analysis or consideration. Rather, the medical evidence supports the conclusion that, despite her moderate limitation in concentration, persistence, or pace, Mitchell is capable of performing the basic mental demands of simple, repetitive, routine, unskilled tasks in a non-crowded work environment with occasional interaction with the public. This court is not "left to guess about how the ALJ arrived at his conclusions." Mascio, 780 F.3d at 637; see also Massey v. Colvin, No. 1:13cv965, 2015 WL

3827574, at *7 (M.D.N.C. June 19, 2015); Hutton v. Colvin, No. 2:14-cv-63, 2015 WL 3757204, at *3 (June 16, 2015).

### Combination of Impairments

Mitchell also asserts that the ALJ failed to examine how Mitchell's severe mental impairments affected her in combination with her physical complaints. Mitchell relies upon medical evaluations provided by her treating physician to the Department of Social Services indicating that Mitchell was prevented from engaging in employment due to her low back pain and depression. R. 415–16.

Specifically, on October 21, 2010, nurse practitioner Tammy Terry completed a Department of Social Services medical evaluation form and indicated that Mitchell was unable to participate in employment for three months due to low back pain, degenerative disc disease, and knee pain. R. 417–18. On February 9, 2011 and January 25, 2012, Dr. Collins completed Department of Social Services medical evaluation forms, indicating that Mitchell was unable to participate in employment for 12 months due to chronic lumbar pain and depression. Id. Mitchell asserts that these evaluations establish that the ALJ failed to properly consider her physical and mental impairments in combination.

When a claimant has multiple impairments, the ALJ must consider the combined effect of those impairments in determining whether the claimant is disabled. 20 C.F.R. § 404.1523; Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). "It is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render [a] claimant unable to engage in substantial gainful activity." Id. at 50. In addition to "not fragmentiz[ing]" the effect of the claimant's impairments, "the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." Id. at

13

50 (citing Reichenbach v. Heckler, 808 F.2d 309, 312 (4th Cir.1985)). However, "an ALJ need not explicitly state that he or she has considered a claimant's impairments in combination. What matters is whether it is discernible from the ALJ's decision that he or she did so." Jones v. Astrue, No. 7:10cv00313, 2011 WL 1877677, at *12 (W.D. Va. May 17, 2011).

Here, the ALJ explicitly found in her opinion that Mitchell did not have an impairment or combination of impairments that met one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R.18. The ALJ's written opinion reveals that she thoroughly considered all of the evidence relating to Mitchell's alleged physical and mental impairments when developing an RFC and finding Mitchell disabled as of May 31, 2012. Indeed, the ALJ incorporated both exertional and nonexertional limitations in Mitchell's RFC and the ALJ's hypothetical questions to the vocational expert addressed all of these limitations. R. 60–65. It is apparent from the RFC itself that the ALJ accounted for the cumulative impact of Mitchell's impairments as supported by the record, providing restrictions that are both mental (e.g. "limited to simple, repetitive, unskilled tasks in a non-crowded work environment with only occasional interaction with the public") and physical (e.g. "only occasional handling with the bilateral hands"). R. 27. Mitchell fails to state with any degree of precision how the restrictions provided for in the RFC neglect to address any combined impact of her mental and physical impairments.

Additionally, the medical evaluation forms completed by Dr. Collins were for the purpose of obtaining assistance from social services, and are not determinative of Mitchell's entitlement to SSI benefits. The determination made by any other governmental agency that an individual is disabled is not binding on the Commissioner. 20 C.F.R. § 416.904; SSR 06-03p. The ALJ considered the medical evaluations by Nurse Practitioner Terry and Dr. Collins and

14

accorded them weight along with the other evidence in the record. R. 22. Therefore, I find that the ALJ did not fail to analyze the combined effect of Mitchell's medical problems.

**Credibility**

Finally, Mitchell contends that the ALJ's credibility findings are not supported by substantial evidence. In support, Mitchell emphasizes her consistent complaints of depression, anxiety, chronic back pain and knee pain. Pl's Br. Summ. J. p. 37. Mitchell asserts that "the medical evidence of record fully supports [Mitchell's] allegations regarding her functional limitations. Pl's Br. Summ. J. p. 39.

Mitchell alleged disability due to depression, anxiety, back problems, migraine headaches, neck problems, cysts on her ovaries, excessive body heat, dizziness, and pain in her back, neck, right knee and ankles. R. 26. Mitchell claims that she cannot lift more than 20 pounds, sit or stand for very long, kneel, bend, squat, climb stairs, reach, concentrate, tolerate stress, remember, complete tasks, get along with others, tolerate being in a crowd, or use her hands. R. 26. The ALJ found that while Mitchell's medically determinable impairments could reasonably be expected to cause her alleged symptoms; her statements concerning the intensity, persistence and limiting effects of those symptoms are not credible prior to May 31, 2012.[6] R. 26.

---

[6] The ALJ uses the following boilerplate language in her analysis:

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity.

R. 26. Recently, in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), the Fourth Circuit held that this boilerplate "gets things backwards" and conflicts with the agency's own regulations, which require the ALJ to determine the extent to which a claimant's alleged functional limitations are consistent with the medical findings and other evidence. Id. at 639. The Fourth Circuit found, however, that any error associated with use of this boilerplate is harmless if the ALJ "properly analyzed credibility elsewhere." Id. In this case, the ALJ properly analyzed Mitchell's credibility in spite

15

It is the ALJ's duty, not this court's, to determine the facts and resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir .1996). In doing so, the ALJ must examine all of the evidence, including the objective medical record, and determine whether Mitchell met her burden to prove that she suffers from an underlying impairment which is reasonably expected to produce her claimed symptoms. Craig v. Chater, 76 F.3d 585, 592–93 (4th Cir .1996); see also 20 C.F.R. § 416.929(c). The ALJ then must evaluate the intensity and persistence of the claimed symptoms and their effect upon Mitchell's ability to work. Craig, 76 F.3d at 594–95. The ALJ is not required to accept a claimant's allegations of her limitations if they are inconsistent with the objective evidence of the underlying impairment, or with the extent to which the impairment can reasonably be expected to cause the pain alleged. Hines v. Barnhart, 453 F.3d 559, 565 & n.3 (4th Cir. 2006) (citing Craig, 76 F.3d at 595).

Here, the ALJ made detailed credibility findings as to Mitchell's complaints of her symptoms related to her back pain, knee pain, and alleged difficulty with her hands. R. 26–27. I previously discussed the lack of evidence in the record relating to Mitchell's alleged inability to grip and handle prior to May 31, 2012, as well as the records relating to the severity of Mitchell's depression and anxiety. The ALJ did not dispute that Mitchell suffers from back and knee pain, but found no evidence of neurological deficits in Mitchell's lower extremities. R. 26. Further, the ALJ accounted for the limitations imposed by Mitchell's conditions by limiting her to a very restricted range of light work. R. 25.

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's

---

of this boilerplate language. See Shelton v. Colvin, No. 7:13CV00470, 2015 WL 1276903, at *6 n. 4 (W.D. Va. Mar. 20, 2015).

conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). If the ALJ points to substantial evidence in support of her decision and adequately explains the reasons for her finding on the claimant's credibility, I must uphold the ALJ's determination. Spencer v. Barnhart, Civ. Action No. 7:06cv420, 2007 WL 1202865, at *1 (W.D. Va. Apr. 20, 2007) (citing Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001)). Here, the ALJ's decision identifies the evidence forming the basis of the credibility determination, and adequately explains her reasons for finding Mitchell's statements about her symptoms not fully credible. I therefore recommend affirming the ALJ's credibility determination.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such

17

objection.

          Enter:   August 11, 2015

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge