# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **TERESA M. MITCHELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 7:14cv00041** |
| **v.** | ) | |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | **By:  Michael F. Urbanski** |
| **Commissioner of Social Security,** | ) | **United States District Judge** |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation on August 11, 2015, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted and the Commissioner's final decision be affirmed. Plaintiff Teresa M. Mitchell has filed objections to the report and this matter is now ripe for the court's consideration.

### I.

Rule 72(b) of the Federal Rules of Civil Procedure permits a party to "serve and file specific, written objections" to a magistrate judge's proposed findings and recommendations within fourteen days of being served with a copy of the report. See also 28 U.S.C. § 636(b)(1). The Fourth Circuit has held that an objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir.), cert denied, 127 S. Ct. 3032 (2007).

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that

> was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id. The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. Apr. 28, 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) (quoting Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982))). "The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein." Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. May 6, 2009), aff'd, 373 F. App'x 346 (4th Cir.), cert. denied, 131 S. Ct. 610 (2010); see Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only '*those portions* of the report or *specified* proposed findings or recommendations *to which objection is made*.'"). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F.

App'x 268 (4th Cir. 2012); see also Thomas v. Arn, 474 U.S. 140, 154 (1985) ("[T]he statute does not require the judge to review an issue de novo if no objections are filed").

Additionally, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

## II.[1]

In her objections, Mitchell takes the magistrate judge's report section by section and asserts each of his conclusions is erroneous. In large part, she simply disagrees with his determination that the Administrative Law Judge's (ALJ) decision is supported by substantial evidence and, in so doing, reiterates arguments she previously raised in her 40-page summary judgment brief and at oral argument. Such general and conclusory objections do not warrant de novo review. Veney, 539 F. Supp. 2d at 844-46. To the limited extent Mitchell objects to specific findings in the report, however, the court has reviewed de novo those portions of the report and, for the reasons set forth herein, overrules her objections.

---

[1] Detailed facts about Mitchell's impairments and medical and procedural history can be found in the report and recommendation (ECF No. 26) and in the administrative transcript (ECF No. 7). As such, they will not be repeated here.

3

## A.

The ALJ determined in this case that Mitchell maintained the residual functional capacity to perform jobs that exist in significant numbers in the national economy from September 15, 2004, her alleged onset date, through May 30, 2012, but found that she met the definition of disability under the Social Security Act as of May 31, 2012. This was the date of a consultative examination performed by Dr. Humphries, who concluded, in relevant part, that Mitchell was limited to occasional handling and fingering with both hands. (Administrative Record, hereinafter "R." 464.) Relying on the testimony of a vocational expert, the ALJ determined that this limitation in Mitchell's bilateral use of her hands eroded the occupational base and warranted a finding of disability as of May 31, 2012. (R. 29, 65).

Mitchell argued on summary judgment that this May 31, 2012 disability onset date was arbitrary, asserting "the record makes clear that plaintiff suffered from limitations in her bilateral hands several years prior to May 31, 2012." Pl.'s Summ. J. Br., ECF No. 14, at 23. She further contended that the ALJ was obligated to consult a medical advisor to determine the precise onset of disability. Id. at 34-36. The magistrate judge disagreed, concluding "the medical evidence does not suggest that [Mitchell's] symptoms were so severe as to limit her ability to frequently handle prior to May 31, 2012," Report & Recommendation, ECF No. 26, at 7, and "[t]he ALJ had no need to appoint a medical advisor because she was able to consider direct evidence of Mitchell's condition before and after the disability onset date," id. at 6.

In her objections, Mitchell reiterates the same arguments raised previously – that the evidence of record documents the limited use of her hands "well before the date of Dr. Humphries' consultative examination," and the "ambiguous" onset date required consultation with a medical advisor. Pl.'s Obj., ECF No. 27, at 2. As the magistrate judge correctly explained in his report:

> Aside from the[] subjective statements by Mitchell, there is little
> evidence in the record to support her claim that she suffered from a

4

severe impairment with handling and fingering in both hands prior to May 31, 2012. Although Mitchell regularly sought treatment for multiple physical conditions, her treatment records contain only two notations of complaints relating to her wrists and hands. Specifically, during a psychiatric evaluation on April 15, 2010, Mitchell reported her physical complaints as "stomach, wrists, knee." R. 383. On October 21, 2010, Mitchell complained to a nurse practitioner with her treating physician, Steven J. Collins, M.D., of worsening bilateral wrist pain, and reported that she had been working a lot on her computer. R. 428. The examination from that date does not reflect that Mitchell had any difficulty with handling, gripping and fingering with her hands. R. 418. There are no treatment notes from any doctor which reflect that Mitchell had been diagnosed with carpal tunnel syndrome. The record contains no indication of any mention that Mitchell had carpal tunnel syndrome prior to May 31, 2012. There are likewise no treatment notes reflecting that Mitchell suffered from limitations in her ability to grip and handle prior to May 31, 2012. Indeed, on November 21, 2011, Mitchell's treating physician Dr. Collins, completed a medical source statement and noted that Mitchell had unlimited manipulative limitations. R. 452. Thus, substantial evidence supports the ALJ's conclusion that Mitchell was not limited to occasional handling with bilateral hands until May 31, 2012.

Report & Recommendation, ECF No. 26, at 5-6.

Mitchell also argues in her objections that the magistrate judge "failed to find that the ALJ impermissibly ignored the impact of [Mitchell's insulin resistance syndrome] on plaintiff's use of her hands." Pl.'s Obj., ECF No. 27, at 3. Mitchell offered the following testimony at the administrative hearing as to the limiting effects of this condition:

Q    Now, I see insulin resistance syndrome.

A    Yes.

Q    What is that?

A    Where -- this is how the doctor explained it to me.  My insulin is being made, and it's making enough for what my body needs.  But my body is not accepting it.  It's like it's rejecting.

Q    What symptoms do you have from that?

A    What happens is like if I don't eat anything, like of a morning or something, I'll start shaking.  I'll feel cold, and I will start feeling nauseous, and I just feel really weak.

Q    How often does that happen?

A    Lately, it's been happening more than what it used to.

Q    How often is that?

A    Probably in a week's time, I probably get at least two times.

(R. 53.)  Contrary to Mitchell's assertions, the ALJ did not ignore this impairment—in fact, she determined it was severe (R. 18) and noted the condition was treatable with medication (R. 26).  And while the medical records do reflect a diagnosis of insulin resistance syndrome and at least one complaint by Mitchell that she "gets shaky and sweaty occasionally" (see, e.g., R. 357), the magistrate judge correctly found that the objective medical evidence does not support any limitation in Mitchell's use of her hands – as a result of insulin resistance syndrome or any other impairment – prior to May 31, 2012.  Of note is the Medical Source Statement of Ability to Do Work-Related Activities (Physical) filled out by Mitchell's treating physician Dr. Collins on November 21, 2011, in which he opines that she has no limitation in her ability to handle, finger or feel.  (R. 452.)

The court therefore agrees with the magistrate judge's conclusion that the ALJ's determination of Mitchell's disability onset date is supported by substantial evidence. As to this issue, Mitchell's objections are overruled.

## B.

The second section of the magistrate judge's report and the corresponding portion of Mitchell's objections concern the ALJ's assessment of her mental impairments. Mitchell first claims that the magistrate judge "ignored the evidence of record documenting plaintiff's anti-social behavior including lack of cleanliness, body odor, depression and anxiety attacks that prevent her from entering the community," as well as the opinion from consultative examiner Dr. Collins that plaintiff should have limited social interaction. Pl.'s Obj., ECF No. 27, at 3. Mitchell raised this same argument in her summary judgment brief, contending the ALJ erred in finding her mental impairments were not severe enough to medically equal a listed impairment and citing the same pages of the administrative record that she does in her objections. See Pl.'s Summ. J. Br., ECF No. 14, at 26. The magistrate judge addressed Mitchell's argument in detail, finding the ALJ's conclusion that Mitchell did not meet or medically equal Listing § 12.04 or 12.06 is consistent with the reviewing and examining opinion evidence. Mitchell argues to the contrary that the record evidence reflects a marked limitation in social functioning, activities of daily living, and maintaining concentration, persistence and pace. Pl.'s Obj., ECF No. 27, at 4. The court cannot agree. As the magistrate judge correctly found, "[t]he only marked impairment assessed by any of the reviewing or consulting psychologists was a marked limitation with carrying out detailed instructions." Report & Recommendation, ECF No. 26, at 10. Aside from that one marked impairment, the reviewing state agency psychologists determined Mitchell had no more than moderate limitations in areas of understanding and memory, sustained concentration and persistence, and social interaction. (R. 81-83, 337-38.) And consistent with those findings, the consultative psychologist Annemarie Carroll

7

determined that despite Mitchell's long history of depression and anxiety, "she appears to be functioning at a higher level than she believes," and would be able to follow simple commands, maintain regular attendance, and perform in an employment setting that requires limited social interaction. (R. 315.) On this record, the court finds substantial evidence to support the ALJ's determination that Mitchell's mental impairments do not meet or medically equal a listing.

Mitchell also objects to the magistrate judge's conclusion that the ALJ's assessment of her mental impairments satisfied the requirements of Social Security Ruling 96-8p. Mitchell specifically argues:

> The Report and Recommendation erroneously concludes that because the vocational expert considered the opinions of the consultative examiner and state agency physicians and testified that plaintiff could perform work in the national economy, the ALJ satisfied the requirements of SSR 96-8p and differed from the ALJ's findings in <u>Mascio [v. Colvin</u>, 780 F.3d 632, 638 (4th Cir. 2015)]. (Dkt. #26, p. 12). . . .

Pl.'s Obj., ECF No. 27, at 4. The magistrate judge thoroughly addressed the SSR 96-8p argument raised by Mitchell on brief, as well as the <u>Mascio</u> argument raised at oral argument,[2] and the court finds no error in his analysis. The magistrate judge held:

> Here, the ALJ's discussion of Mitchell's mental limitations satisfies the requirements of SSR 96-8p. The ALJ considered both medical and non-medical evidence in assessing Mitchell's RFC and provided the narrative discussion required by the regulations. The ALJ noted the history of Mitchell's mental symptoms, and reviewed her mental health treatment in detail. R. 18–25. The ALJ reviewed and considered each of the physicians' opinions relating to Mitchell's mental impairments, and assigned great weight to the opinions of the state agency psychologists and consultative examiner. R. 18–25. The ALJ also considered Mitchell's testimony as to her daily activities and social interaction and her reports of the same to the consultative physicians. R. 18–25. Given the ALJ's consideration of medical opinions, the claimant's testimony, and evidence of mental impairment, which she documented through a narrative discussion,

---

[2] The decision in <u>Mascio</u> was issued on March 18, 2015, after the parties had filed their summary judgment briefs but prior to the April 1, 2015 oral argument in this case.

> the court is capable of meaningfully reviewing the RFC; thus, the ALJ
> met the requirements of SSR 96-8p. See Taylor v. Astrue, No. BPG-
> 11-0032, 2012 WL 294532, at *6 (D. Md. Jan. 31, 2012).

Report & Recommendation, ECF No. 26, at 10. The ALJ spends more than six pages of her

opinion detailing the medical evidence of record, including in relevant part mental health treatment

records from EHS Mental Health Support Services, the consultative findings of Dr. Carroll, and

treatment notes from Dr. Desai. (R. 18-25.) The ALJ summarized: "The claimant has been treated

for anxiety and depression; however, she has not required inpatient care since her alleged onset day

of disability and she has improved with counseling and medications." (R. 26.) As for the opinion

evidence:

> This Administrative Law Judge notes that psychological consultants for the State agency, Louis
> Perrot, PhD, and Maurice Prout, PhD, opined that the claimant retains the residual functional
> capacity to perform simple, routine, non- stressful work with limited social interaction (Exs. 2A,
> 8F and 9F). This Administrative Law Judge gives great weight to these opinions, as they are
> consistent with evaluation of Dr. Carroll in Exhibit 5F, the claimant's treatment history and the
> claimant's activities of daily living.

(R. 27.) Plainly, the ALJ adequately addressed Mitchell's mental limitations at steps 4 and 5 and

satisfied the requirements of SSR 96-8p.

The court also agrees with the magistrate judge's conclusion that the ALJ properly accounted

for Mitchell's limitations in concentration, persistence and pace in this case. In Mascio v. Colvin,

780 F.3d 632, 638 (4th Cir. 2015), the Fourth Circuit agreed with other circuits that have held "an

ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by

restricting the hypothetical question to simple, routine tasks or unskilled work.'" 780 F.3d at 638

(citing Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). The problem in

Mascio, however, was the lack of explanation given by the ALJ. The Fourth Circuit stated:

> Perhaps the ALJ can explain why Mascio's moderate limitation in
> concentration, persistence, or pace at step three does not translate
> into a limitation in Mascio's residual functional capacity. For

9

example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. See [Winschel, 631 F.3d] at 1181. But because the ALJ here gave no explanation, a remand is in order.

780 F.3d at 638. The Winschel case, on which Mascio relies, recognized that "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." 631 F.3d at 1180 (citing Simila v. Astrue, 573 F.3d 503, 521–22 (7th Cir. 2009); Stubbs–Danielson v. Astrue, 539 F.3d 1169, 1173–76 (9th Cir. 2008); Howard v. Massanari, 255 F.3d 577, 582 (8th Cir. 2001)). The Winschel court went on to state:

> Additionally, other circuits have held that hypothetical questions adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations. See White v. Comm'r of Soc. Sec., 572 F.3d 272, 288 (6th Cir. 2009) (concluding that the ALJ's reference to a moderate limitation in maintaining "attention and concentration" sufficiently represented the claimant's limitations in concentration, persistence, and pace); Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002) (concluding that the hypothetical question adequately incorporated the claimant's limitations in concentration, persistence, and pace when the ALJ instructed the vocational expert to credit fully medical testimony related to those limitations).

> In this case, the ALJ determined at step two that Winschel's mental impairments caused a moderate limitation in maintaining concentration, persistence, and pace. But the ALJ did not indicate that medical evidence suggested Winschel's ability to work was unaffected by this limitation, nor did he otherwise implicitly account for the limitation in the hypothetical. Consequently, the ALJ should have explicitly included the limitation in his hypothetical question to the vocational expert.

631 F.3d at 1180-81.

Therefore, as the magistrate judge aptly reasoned in the instant case:

> Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates

10

into a limitation in the [residual functional capacity]. Rather, <u>Mascio</u> underscores the ALJ's duty to adequately review the evidence and explain the decision, especially where, as the ALJ held in <u>Mascio</u>, a claimant's concentration, persistence or pace limitation does not affect the ability to perform simple, unskilled work. The ALJ has the responsibility to address the evidence of record that supports that conclusion.

Report & Recommendation, ECF No. 26, at 12.

Here, the ALJ did not account for Mitchell's impairment in concentration, persistence and pace by simply limiting her to unskilled work, as was the case in <u>Mascio</u>. Rather, in this case, the ALJ incorporated Mitchell's mental impairments into her residual functional capacity assessment as follows: "The claimant's moderate difficulty in maintaining social functioning and concentration further limit the claimant nonexertionally to the performance of simple, repetitive, unskilled tasks in a non-crowded work environment with only occasional interaction with the public." (R. 27.) This limitation is consistent with the opinion evidence from the reviewing state agency psychologists Drs. Perrot and Prout, and the consulting psychological examiner Dr. Carroll, to which the ALJ assigned great weight. This evidence reveals that Mitchell has moderate difficulty working in close proximity to others without being distracted, getting along with coworkers, interacting appropriately with the general public, accepting instructions and responding appropriately to criticism from supervisors, and maintaining attention and concentration for extended periods, as well as moderate to marked difficulty understanding, remember, and carrying out detailed instructions. (R. 82-83, 337-38.) Nevertheless, in spite of these limitations, the state agency psychologists determined Mitchell is capable of understanding and following simple instructions and working in a non-stressful, non-crowded environment requiring limited social interaction. (R. 83, 339.) Their conclusions are corroborated by the opinion of Dr. Carroll, who explained:

11

**Functional Information**

Ms. Mitchell can follow simple commands. She has the ability to learn more complex tasks, but her low frustration tolerance may result in her refusing to attempt tasks that she believes are too difficult. Ms. Mitchell demonstrated some irritability today, says she is easily angered by people who "do the wrong thing," and is very external in her sense of responsibility for her anger. She would perform best in an employment setting that requires limited social interaction. Ms. Mitchell reports a long history of depression and anxiety, which is worsened by her low frustration tolerance and limited coping skills. However despite this, she appears to be functioning at a higher level than she believes, as she is out of the house daily, is the primary caregiver for her children and adequately performs all household chores. Based solely on her psychiatric condition, she should be able to maintain regular attendance on a job.

(R. 315.) These three psychologists' opinions provide ample support for the ALJ's residual functional capacity assessment in this case. Thus, the magistrate judge properly concluded:

> [T]his is not a situation like Mascio, where the ALJ summarily concluded that a limitation of simple, unskilled work accounts for the claimant's moderate impairment in concentration, persistence and pace with no further analysis or consideration. Rather, the medical evidence supports the conclusion that, despite her moderate limitation in concentration, persistence, or pace, Mitchell is capable of performing the basic mental demands of simple, repetitive, routine, unskilled tasks in a non-crowded work environment with occasional interaction with the public. This court is not "left to guess about how the ALJ arrived at his conclusions." Mascio, 780 F.3d at 637; see also Massey v. Colvin, No. 1:13cv965, 2015 WL 3827574, at *7 (M.D.N.C. June 19, 2015); Hutton v. Colvin, No. 2:14-cv-63, 2015 WL 3757204, at *3 (June 16, 2015).

Report & Recommendation, ECF No. 26, at 12-13. As such, Mitchell's objections are overruled.

## C.

Mitchell next contends the magistrate judge erred in concluding the ALJ properly considered the combined effects of her impairments. Pl.'s Obj., ECF No. 27, at 6. She argues, without further explanation, that "the Report and Recommendation erroneously concludes that the ALJ properly assessed the evaluations and opinions of Nurse Practitioner Terry and Dr. Collins." Id. This is plainly a general objection to the conclusion reached by magistrate judge as to the same argument Mitchell raised in her summary judgment brief. See Pl.'s Summ. J. Br., ECF No. 14, at 30. As such, it does not require de novo review.

12

Mitchell also insists "the ALJ failed to assess the effect of plaintiff's insulin resistant syndrome upon her ability to use her hands and erred in finding plaintiff did not develop carpal tunnel syndrome and resulting limitations in her hand precluding work until May 31, 2012." Id. The court addressed this argument in detail in § A., supra. As previously stated, the objective medical evidence does not support any limitation in Mitchell's use of her hands – from insulin resistance syndrome or any other impairment -- prior to May 31, 2012.

There is simply no basis for Mitchell's assertion that the ALJ failed to analyze the combined effects of her impairments. The court agrees with the magistrate judge that "Mitchell fails to state with any degree of precision how the restrictions provided for in the [residual functional capacity assessment] neglect to address any combined impact of her mental and physical impairments." Report & Recommendation, ECF No. 26, at 14. It is clear from the ALJ's opinion that she properly considered all of Mitchell's impairments in combination in rendering her decision.

### D.

Finally, Mitchell objects to the magistrate judge's conclusion that the ALJ's credibility determination is supported by substantial evidence. Specifically, Mitchell takes issue with the magistrate judge's finding that, unlike in Mascio, the ALJ properly analyzed Mitchell's credibility in spite of the boilerplate language that appears in her decision. Report & Recommendation, ECF No. 26, at 15 n.6. Mascio holds that an ALJ's analysis must adequately explain the findings made as to plaintiff's credibility beyond the "vague (and circular) boilerplate statement that [s]he did not believe any claims of limitations beyond what [s]he found when considering [claimant's] residual functional capacity." 780 F.3d at 640.

Here, the ALJ sufficiently explained her assessment of Mitchell's credibility as to the limiting nature of her impairments prior to May 31, 2012:

Case 7:14-cv-00041-MFU-RSB   Document 28   Filed 09/28/15   Page 13 of 15   Pageid#: 719

> The records show the claimant does have back and knee pain; however, the evaluation of the evidence detailed above shows no evidence of any neurological deficits in the lower extremities. In addition, the claimant ambulates independently, cares for two young children, drives, shops cooks, and helps care for her father. The claimant has a history of migraine headches but there is no evidence of current treatment for headaches. There is no medical evidence of carpal tunnel syndrome prior to May 31, 2012 as well. The claimant has been treated for anxiety and depression; however, she has not required inpatient care since her alleged onset day of disability and she has improved with counseling and medications. The claimant does have polycystic ovary syndrome and insulin resistance but these conditions are treatable with medications.

(R. 26.) As for the following period, the ALJ determined that "the claimant's allegations regarding her symptoms and limitations are generally credible considering the objective findings on the examination by Dr. Humphries"—referring to the additional limitation concerning the bilateral use of Mitchell's hands, which was included in the residual functional capacity assessment as of May 31, 2012, and which eroded the occupational base. (R. 27.)

In short, the ALJ's decision makes clear that she examined all of the evidence and determined that Mitchell's allegations as to the limiting effects of her impairments were inconsistent with the objective evidence of those impairments prior to May 31, 2012. After that period, however, the ALJ credited Mitchell's statements concerning the limited use of her hands, in light of the objective findings documented in Dr. Humphries' report. The explanation provided for the ALJ's credibility findings in this case does not run afoul of <u>Mascio</u> and is supported by substantial evidence. Credibility determinations are emphatically the province of the ALJ, not the court, and courts normally should not interfere with these determinations. <u>See, e.g.</u>, <u>Chafin v. Shalala</u>, No. 92–1847, 1993 WL 329980, at *2 (4th Cir. Aug. 31, 1993) (per curiam) (citing <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990) and <u>Thomas v. Celebrezze</u>, 331 F.2d 541, 543 (4th Cir. 1964)); <u>Melvin v. Astrue</u>, 6:06 CV 00032, 2007 WL 1960600, at *1 (W.D. Va. July 5, 2007) (citing <u>Hatcher v. Sec'y of Health & Human Servs.</u>, 898 F.2d 21, 23 (4th Cir. 1989)). As such, Mitchell's objection is overruled.

## III.

At the end of the day, it is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet her burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). To that end, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

The court has reviewed the magistrate judge's report, the objections to the report, , and the administrative record and, in so doing, made a de novo determination of those portions of the report to which Mitchell properly objected. The court finds that the magistrate judge was correct in concluding that there is substantial evidence in the record to support the ALJ's decision. As such, the magistrate judge's report and recommendation will be adopted in its entirety.

An appropriate Order will be entered to that effect.

Entered: September 28, 2015

*/s/ Michael F. Urbanski*

Michael F. Urbanski
United States District Judge

15